**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**


DOCRX, INC.,                                      :

      Plaintiff,                            :

vs.                                               :        CA 10-0364-C

DOX CONSULTING, LLC, et al.,        :

      Defendants.                          :


<u>**MEMORANDUM OPINION AND ORDER**</u>

      This cause is before the undersigned on the defendants' motion to dismiss for lack of personal jurisdiction and improper venue or to transfer venue (Doc. 4; *see also* Doc. 5), plaintiff's response in opposition (Doc. 8), the defendants' reply (Doc. 11), and plaintiff's sur-reply (*see* Doc. 12, Attached Sur-Reply). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Docs. 7 & 9 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")) After consideration of the foregoing pleadings, with attachments, along with plaintiff's

1

complaint, the Court finds that the defendants' motion to dismiss for lack of personal jurisdiction and improper venue or to transfer venue (Doc. 4) should be **DENIED**.

## FINDINGS OF FACT

1.      DocRX, Inc., an Alabama pharmaceutical dispensing company (*see* Doc. 1, COMPLAINT, at ¶¶ 1 & 7),[1] provides "point of care pharmaceutical dispensing software to physicians and medical groups and clinics across the United States[]" (Doc. 8, Affidavit of Brian Ward, at ¶ 1) which allows "physicians to dispense pre-packaged medication at the point of care[]" (Doc. 1, COMPLAINT, at ¶ 7; *cf.* Doc. 5, Exhibit 1, Affidavit of Mickey Guidry, at ¶ 2 ("DocRx is in the business of providing certain medications to physicians who in turn make point of care sales to patients.")).

2.      The plaintiff "recruited pharmaceutical sales representatives" to promote it and its services to the aforementioned physician groups and offices (Doc. 1, COMPLAINT, at ¶ 9) and between February and May of 2009 plaintiff specifically recruited "the individual Defendants in to promote DocRX." (*Id*. at ¶ 10; *see also* Doc. 8, Ward aff., at ¶ 2)   As part of the parties' oral promotion agreement, "DocRX agreed to distribute profits to the[] individual[] [defendants] on a percentage basis for any accounts brought into the DocRX business by them and others." (Doc. 1, COMPLAINT, at ¶ 10; *see also* Doc. 5, Exhibit 1, Guidry aff., at ¶ 2 ("In 2009, I did have an arrangement with

_____

[1]      DocRx's principal place of business is in Mobile, Alabama. (*Id*. at ¶ 1)

2

DocRx under which I would receive a share of the profits for accounts I brought to DocRx.")) [2] Plaintiff sent all distribution/commission checks to the individual defendants from its "operating account in Alabama." (Doc. 8, Ward aff., at ¶ 2)

3.      Individual defendants Scott Ray, Garrett Hebert, and Stacy Patin signed non-compete agreements with DocRX. (Doc. 8, Ward aff., at ¶ 10; *see also* Doc. 5, Exhibit 5, Affidavit of Scott Ray, at ¶ 2 ("In connection with my agreement with DocRx I did sign a document entitled Noncompete Agreement."); Exhibit 7, Affidavit of Garrett Hebert, at ¶ 2 (same); Exhibit 8, Affidavit of Stacy Patin, at ¶ 2 (same)) While these non-compete agreements were signed by Ray, Hebert, and Patin outside the State of Alabama (Doc. 5, Exhibits 5, 7 & 8, at ¶ 2), they were faxed to DocRX in Mobile, Alabama (Doc. 8, Ward aff., at ¶ 10) and at that point were executed by Ward on behalf of DocRX and then sent back to Ray, Hebert, and Patin (*see* Doc. 12, Exhibit A, Second Affidavit of

---

[2]      "Portions of the preliminary discussions between DocRX and the individual Defendants relating to the profit-sharing agreement took place at DocRX headquarters in Mobile, Alabama." (Doc. 8, Ward aff., at ¶ 3) At least one of the two individual defendants who participated in such preliminary discussions in Mobile disagrees with Ward that those discussions took place at plaintiff's corporate headquarters. (*Compare* Doc. 5, Exhibit 2, Affidavit of Matthew Herfield, at ¶ 2 ("Except for the one 45 minute lunch meeting in Mobile, which took place in a fast food restaurant at which I stopped on my way driving from Georgia to Louisiana, my participation in any discussions with DocRx about anything all took place outside the State of Alabama. The 45 minute lunch was a preliminary discussion and no agreement was made at that meeting.") *with id.,* Exhibit 3, Affidavit of Josh Booty, at ¶ 2 ("Except for one 45 minute lunch meeting in Mobile, my participation in any discussions leading up to the agreement took place outside the State of Alabama. The 45 minute lunch was a preliminary discussion and no agreement was made at that meeting."))

Brian Ward, at ¶¶ 2-4 & Exhibits 1-3 to second aff. of Ward). These documents provide that the "agents" (Ray, Hebert and Patin) were contracting with DocRX to provide sales of plaintiff's software services-facilitating pharmaceutical drug purchases between medical providers and pharmacists-to medical providers on a commission basis in exchange for which they agreed "not to directly or indirectly compete with the business of DocRX and its successors and assigns during the period of employment by Company and for a period of one (2)[3] years following termination of employment and notwithstanding the cause or reason for termination." (Doc. 12, Exhibit 2 to second aff. of Ward)

> The term "not to directly or indirectly compete" as used herein shall mean that the Agent shall not own, manage, operate, consult or be employed in a business (i) anywhere in the United States and (ii) substantially similar to or competitive with the present business of the DocRX or such other business activity in which the DocRX may substantially engage during the term of employment.

> The Agent acknowledges that ***DocRX shall or may in reliance of this agreement work with the Agent and provide Agent access to customers and other confidential data and good will. Agent agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose same to any third party.***

(*Id*. (emphasis supplied))

---

[3]     At first blush, it would appear that the written number controls.

4. Plaintiff trained the individual defendants in mid-2009 in order to acclimate them to DocRX's business operations and software. (Doc. 8, Ward aff., at 4) This training took place via the internet, "with the training originating in Mobile, Alabama[]" and also by conference calls "originating from Mobile, Alabama." (*Id.*; *see, e.g.,* Doc. 5, Exhibit 3, Booty aff., at ¶ 3 ("To the extent DocRx provided any training or information the same was provided to me outside the State of Alabama."))

> Included in this training process was an overview of all of the aspects of DocRX's business processes and ideas, including education on the computer software system, a background on the pharmaceutical companies involved in the industry, the nature of the industry as a whole, the DocRX method of marketing, DocRX's billing methods and accounting procedures, DocRX's private client list and target client lists, names of individual sales representatives, and the appropriate manner in which to comply with state laws governing the industry.

(Doc. 1, COMPLAINT, at ¶ 11)

5. The individual defendants "distributed promotional material on behalf of DocRX to potential clients that [] stated that DocRX was an Alabama corporation." (Doc. 8, Ward aff., at ¶ 5) Moreover, "the individual Defendants and others held themselves out to be representatives and/or agents of DocRX to physician groups and offices across the country through oral and written communications." (Doc. 1, COMPLAINT, ¶ 12) However, except for one instance,[4] all work performed by the individual defendants for

---

[4] This one instance occurred in late 2009 when individual defendants Matthew Herfield and Josh Booty met with DocRX president and CEO, Brian Ward, in Mobile and
(Continued)

plaintiff was done outside the State of Alabama. (*See, e.g.,* Doc. 5, Exhibit 1, Guidry aff., at ¶ 4 ("[M]y arrangement with DocRx contemplated that I would do work exclusively outside the State of Alabama, and all my conduct in connection with that agreement was undertaken outside the State of Alabama."))

6.      Since the formation of Dox Consulting[5] on January 1, 2010 (Doc. 1, COMPLAINT, at ¶ 15) and the disassociation with DocRx in late 2009,[6] "the Defendants have used DocRX documents and materials provided to them during their time with DocRX in promoting Dox Consulting and in attempting to take clients [] from DocRX." (Doc. 8, Ward aff., at ¶ 7; *see* Doc. 1, COMPLAINT, at ¶ 19 ("Since the launch of Dox Consulting, members of Dox Consulting, including the individual Defendants, have continued to represent themselves as DocRX representatives and/or agents through written and oral communications with current and potential DocRX clients in an attempt to take business away from DocRX.")) In addition, since January of 2010, "the

---

"attempted to procure the business of the Mobile Infirmary Medical Center, located in Mobile, Alabama." (Doc. 8, Ward aff., at ¶ 6)

[5]      "The business of Dox Consulting is identical in nature to that of DocRX; both are involved with physician point of care pharmaceutical dispensing." (Doc. 1, COMPLAINT, at ¶ 16)

[6]      "During the latter months of 2009, DocRX began to experience problems with the individual Defendants involved in the profit distribution agreement arising from the profit distribution scheme, company structure, and other internal issues." (Doc. 1, COMPLAINT, at ¶ 13)

Defendants have made numerous phone calls, sent numerous emails, and initiated other correspondence to DocRX in Alabama." (Doc. 8, Ward aff., at ¶ 8) Finally, Dox Consulting has contacted current DocRX sales representatives located in Alabama, Chris Gaddy and Andrew Lewis, in an attempt to hire them away from plaintiff despite the knowledge that both men were under contract with DocRX. (*See id.* at ¶ 9)

7.      DocRX, Inc. filed suit against Dox Consulting, LLC and eight individual defendants on June 10, 2010 in the Circuit Court of Mobile County, Alabama. (Doc. 1, COMPLAINT)

## FIRST CAUSE OF ACTION

### (Misappropriation)

22.      DocRX incorporates and realleges the allegations and matters contained in paragraphs 1-21 above.

23.      This action is brought pursuant to the Alabama Trade Secrets Act, § 8-27-1, *et seq.*, Code of Alabama 1975.

24.      MDScripts specifically tailored the software it developed for DocRX to DocRx's business and its unique business needs. The software is exclusive to DocRX, and nobody else has software that is identical to DocRX's. The software is essential to the continued economic viability and success of DocRX.

25.      DocRX trained and educated the individual Defendants on the entire business of physician point of care pharmaceutical dispensing, including DocRX's business processes and ideas. Further, DocRX provided the individual Defendants with access to DocRX's private client lists, records, and other aspects of the inner workings of DocRX's business.

26.     Without the DocRX "idea" or "process," which DocRX provided to the individual Defendants, the Defendants would be unable to form Dox Consulting.

27.     The Defendants owed DocRX a duty not to misappropriate the DocRX software, business processes and ideas, and/or other private documents and records specific to DocRX's business.

28.     The Defendants breached their duty of confidence to DocRX by attempting to use DocRX's software, by attempting to obtain DocRX's software through MDScripts, by obtaining other physician dispensing software in an effort to undermine DocRX and take its clients, by learning and subsequently taking DocRX's business processes and ideas, and by using DocRX's private existing client lists and other business documents for Dox Consulting's economic advantage.

29.     As a proximate result of the Defendants' misappropriation of DocRX's software, business processes and ideas, and private client lists and other documents, DocRX has sustained, and will continue to sustain, substantial damages, including but not limited to lost profits, benefits, and other actual damages.

WHEREFORE, Plaintiff DocRX demands judgment against the Defendants for compensatory damages, plus interest and costs.

## SECOND CAUSE OF ACTION

### (Slander)

30.     DocRX incorporates and realleges the allegations and matters contained in paragraphs 1-29 above.

31.     Since the launch of Dox Consulting, Guidry, Herfield, Booty, Daigle, Ray, and Massengale have engaged in a pattern of making false and defamatory statements about DocRX to DocRX's current and potential clients in an effort to take these clients away from DocRX.

32.     Guidry, Herfield, Booty, Daigle, Ray, and Massengale have knowingly made these false and defamatory statements.

33.     The false and defamatory statements made by Guidry, Herfield, Booty, Daigle, Ray, and Massengale are intended to damage DocRX's reputation in the business community, and have caused and continue to cause DocRX embarrassment and humiliation.

34.     As a proximate result of Guidry, Herfield, Booty, Daigle, Ray, and Massengale's false and defamatory statements about DocRX, DocRX has sustained, and will continue to sustain, substantial damages, including but not limited to lost profits and benefits from the loss of current and potential business, and other actual damages.

WHEREFORE, Plaintiff DocRX demands judgment against Guidry, Herfield, Booty, Daigle, Ray, and Massengale for compensatory damages, plus interest and costs.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

35.     DocRX incorporates and realleges the allegations and matters contained in paragraphs 1-34 above.

36.     During May and June 2009, Ray, Hebert, and Patin signed non-compete agreements with DocRX, which provided that in return for commission compensation provided by DocRX for accounts brought into DocRX by them, Ray, Hebert, and Patin would refrain from competing with DocRX following the termination of their relationships with DocRX.

37.     Ray, Hebert, and Patin breached these non-compete agreements by working on behalf of Dox Consulting to procure and solicit business in direct competition with DocRX following the creation of Dox Consulting on January 1, 2010.

38.     As a proximate result of Ray, Hebert, and Patin's breach of their non-compete agreements, DocRX has sustained, and will continue to sustain, substantial damages, including but not limited to lost profits, benefits, and other actual damages.

WHEREFORE, Plaintiff DocRX demands judgment against Ray, Hebert, and Patin for compensatory damages, plus interest and costs.

## FOURTH CAUSE OF ACTION

### (Tortious Interference with a Contractual Relation)

39.     DocRX incorporates and realleges the allegations and matters contained in paragraphs 1-38 above.

40.     The individual Defendants gained knowledge of DocRX's private client lists while being trained by DocRX.

41.     Since the launch of Dox Consulting, the individual Defendants have taken many steps to try to take business away from DocRX, including making false and defamatory statements to DocRX's current clients concerning DocRX's business operations, reputation for honesty, and status within the industry.

42.     Due to the individual Defendants' intentional misrepresentations made to DocRX's current clients, specifically the Campbell Clinic and Tria, with whom DocRX has existing contractual agreements, DocRX suffered lost profits for a period of time and a still ongoing delay in business operations with these clients.

43.     As a proximate result of the Defendants' tortious interference with DocRX's contractual relationships, DocRX has sustained, and will continue to sustain, substantial damages, including but not limited to lost profits, benefits, and other actual damages.

WHEREFORE, Plaintiff DocRX demands judgment against the Defendants for compensatory damages, plus interest and costs.

## FIFTH CAUSE OF ACTION

### (Preliminary Injunction)

44.     DocRX incorporates and rellaeges the allegations and matters contained in paragraphs 1-43 above.

45.    DocRX will continue to suffer irreparable injury to its reputation and business if the Defendants continue to operate Dox Consulting using DocRX's business processes and ideas, private client lists and other documents, and other specialized knowledge learned from DocRX.

46.    Further, DocRX will continue to suffer irreparable injury to its reputation and business if the Defendants continue to make false and defamatory statements about DocRX to DocRX's current and potential clients that directly interfere with DocRX's existing contractual relationships.

47.    There is no adequate remedy at law by which DocRX can recover.

48.    The threat of ongoing irreparable injury to DocRX outweighs any harm a preliminary injunction may cause to the Defendants.

WHEREFORE, plaintiff DocRX seeks an order enjoining the Defendants from continuing to operate Cox Consulting using DocRX's protected business processes and ideas and from continuing to make false and defamatory statements about DocRX to DocRX's current and potential clients.

(Doc. 1, COMPLAINT, at ¶¶ 22-48)

8.    The defendants removed the action to this Court on July 14, 2010, therein alleging that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, inasmuch "as the citizenship of Plaintiff is diverse from the citizenship of all Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." (Doc. 1, ¶ 2) One week later, on July 21, 2010, the defendants filed the instant motion to dismiss for lack of personal jurisdiction and improper venue or to transfer

venue. (Doc. 4) In support of the motion to dismiss, the defendants attached to their brief the affidavits of each of the eight individually-named defendants (Doc. 5, Exhibits 1-8). Because the contents of these affidavits are virtually identical (*compare id*.), this Court sets out hereinafter only those relevant portions of the affidavit of Mickey Guidry which have not otherwise been covered hereinabove.

1.      My name is Mickey Guidry. I am over the age of twenty-one (21) years and domiciled in the State of Louisiana. I reside in the State of Louisiana. I do not own any property in Alabama; I do not maintain any office in Alabama; I do not have any employees or other representatives, except for my counsel in this action, in Alabama. I have not appointed an agent for service of process in the State of Alabama. I have no regular business or other activities in the State of Alabama. Any of my activities in Alabama are casual in nature, such as stopping to buy gas or food while I may be traveling through Alabama. However, I do not regularly travel into or through Alabama.

.      .      .

5.      I am also familiar with the business of Dox Consulting, LLC. I am the CEO of Dox Consulting. Dox Consulting, LLC is a Louisiana limited liability company with its principal place of business in Shreveport, Louisiana. Dox Consulting never has and does not conduct any business in the State of Alabama. It has no offices in Alabama, owns or leases no property in Alabama, has no employees or other representatives in the State of Alabama and has not appointed an agent for service of process in Alabama. Dox Consulting, LLC never had any agreement of any sort with DocRX, Inc. Dox Consulting has no contacts or any business relations of any sort with any person or entity located in the State of Alabama.

6.      I am a member of and do work for Dox Consulting, LLC. I am aware of the allegations made by DocRx that the Defendants have made defamatory statements and/or  misrepresentations about DocRx and have used trade secrets or confidential information belonging to DocRx when working for Dox Consulting. I categorically deny all of the allegations of

wrongful conduct made against me by DocRx. Additionally, in performing my work for Dox Consulting, all of my acts have been undertaken outside the State of Alabama. All communications I have made in performing for Dox Consulting have been made outside Alabama to persons outside Alabama and my use of any information has occurred outside the State of Alabama. I have never sold or attempted to sell any pharmaceuticals in the State of Alabama, undertaken any activity attempting to sell pharmaceuticals in Alabama, or otherwise taken any activity on behalf of Dox Consulting within the State of Alabama. In short, I have never done anything for Dox Consulting, LLC in the State of Alabama.

(Doc. 5, Exhibit 1, Guidry aff., at ¶¶ 1, 5 & 6)[7] Plaintiff filed its response in opposition on August 16, 2010 (Doc. 8), the defendants their reply on August 23, 2010 (Doc. 11), and the plaintiff its sur-reply on August 27, 2010 (*see* Doc. 12).

## CONCLUSIONS OF LAW

### A.    **Personal Jurisdiction**.

1.    *In personam* jurisdiction in this action, against these non-resident defendants, is predicated upon Alabama's long-arm statute which, in part, provides:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States[.]

---

[7]    The undersigned would note that all individual defendants, save Matthew Herfield and Scott Ray, are residents of Louisiana. (Doc. 5, Exhibits 1, 3, 4, 6, 7 & 8) Herfield is a resident of New York (Doc. 5, Exhibit 2) and Ray is a Florida resident (Doc. 5, Exhibit 5).

Ala.R.Civ.P. 4.2(b).

2.    In a diversity action, like the present one (*see* Doc. 1, ¶ 2 ("This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the citizenship of Plaintiff is diverse from the citizenship of all Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.")), "a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Vermeulen v. Renault, U.S.A. Inc.*, 975 F.2d 746, 753 (11th Cir. 1992), *opinion modified and superseded on other grounds by Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534 (11th Cir.), *cert. denied sub nom. Regie Nationale des Usines Renault S.A. v. Vermeulen*, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993); *see also PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V.,* 598 F.3d 802, 807 (11th Cir. 2010) ("We undertake a two-step inquiry to determine whether the exercise of personal jurisdiction over a nonresident defendant is proper. First, we determine whether the state's long-arm statute provides jurisdiction. Only where the long-arm statute provides jurisdiction do we proceed to the second step and determine whether the defendant has minimum contacts with the forum state and, if it does, whether the district court's exercise of jurisdiction over that defendant would offend traditional notions of fair play and substantial justice." (internal citations, quotation marks, and brackets omitted)); *Sloss Industries Corp. v.*

*Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) ("Personal jurisdiction generally entails a two-step inquiry. First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. Second, we examine whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend traditional notions of fair play and substantial justice." (internal citations and quotation marks omitted)); *Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 830 (11th Cir. 1992) (panel of the Eleventh Circuit states that in determining whether a district court may assert personal jurisdiction depends upon whether the district court could obtain personal jurisdiction over the defendants pursuant to the applicable state long-arm statute and whether the exercise of personal jurisdiction would violate the due process clause of the Fourteenth Amendment), *cert. denied sub nom. South Carolina Property & Casualty Ins. Guar. Ass'n v. Olivier*, 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145, and *cert. denied sub nom. Louisiana Ins. Guar. Ass'n v. Olivier*, 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993). Where, as here, the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, *Mutual Service Ins. Co. v. Frit Industries, Inc.,* 358 F.3d 1312, 1319 (11th Cir. 2004) ("Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible."); *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351,

1355-1356 (11th Cir. 2000) ("Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."); *Ex parte Georgia Farm Bureau Mutual Automobile Ins. Co.*, 889 So.2d 545, 550 (Ala. 2004) ("'"Rule 4.2, Ala.R.Civ.P., extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions."'"); *Ex parte Lagrone*, 839 So.2d 620, 623 (Ala. 2002) ("Rule 4.2, Ala.R.Civ.P., Alabama's long-arm rule, 'extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions.'"), state law need not be applied: this Court "need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Vermeulen, supra*, 975 F.2d at 753; *see also Olivier, supra*, 979 F.2d at 830 ("In interpreting the reach of the state's long-arm statute, the Supreme Court of Alabama has extended the jurisdiction of Alabama courts to the extent permissible under the due process clause of the Fourteenth Amendment. . . . Thus, in order to determine whether the district court in Alabama properly refused to exercise personal jurisdiction, we need only consider whether the exercise of jurisdiction would have satisfied the requirements of due process."); *Morris v. SSE, Inc.*, 843 F.2d 489, 492 n.3 (11th Cir. 1988) ("This case presents no need to examine Alabama's long-arm jurisdictional statute because that statute authorizes a court to assert personal jurisdiction to the limits of federal due process. . . . We recognize that it is well-established in this circuit that in a diversity case, a federal district court

adjudicating a motion to dismiss for lack of personal jurisdiction must determine whether assertion of jurisdiction comports with both state law and the due process requirements of the United States Constitution. . . . However, where the forum's courts interpret the forum's long-arm statute to the limits of *federal* due process, we believe it is not necessary to apply state law; application of the federal *International Shoe* two-part analysis will suffice."); *see Mutual Service Ins. Co., supra*, 358 F.3d at 1319 ("[A]s the offshore insurers concede, the sole contested issue in our personal jurisdiction analysis is whether Alabama's exercise of jurisdiction over the offshore insurers violates due process."). Stated differently, "[i]n this case, the two inquiries merge[] because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Industries Corp., supra,* 488 F.3d at 925 (citations omitted).

3.     A nonresident defendant is amenable to a forum's jurisdiction if "(1) it possesses sufficient minimum contacts with the forum State to satisfy due process requirements, and (2) the forum's exercise of jurisdiction comports with '"traditional notions of fair play and substantial justice."'" *Vermeulen, supra*, 975 F.2d at 754, quoting in part *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).   As recognized in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (citations

omitted), "[d]ue process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *See also Ruiz de Molina, supra*, 207 F.3d at 1356 ("The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some 'minimum contacts' with that state and, the exercise of personal jurisdiction over the defendant would not offend 'traditional notions of fair play and substantial justice.'").

4. The Eleventh Circuit has adopted a three-part standard to determine whether the minimum contacts requirement has been met: "First, the contacts must be related to the plaintiff's cause of action. Second, the contacts must involve some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum[.] Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there." *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1220 (11th Cir. 1999) (citation omitted; internal ellipsis omitted). "In assessing a defendant's 'minimum' contacts with the forum state, courts have distinguished between contacts establishing 'specific' and 'general' jurisdiction." *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130, 1146 (N.D. Fla. 1994) (citations omitted). When a cause of action is related to or arises out of a nonresident defendant's contacts with the forum, the Supreme Court has held that the "'relationship among the

defendant, the forum and the litigation' is the essential foundation of in personam jurisdiction." *Helicopteros, supra,* 466 U.S. at 414, 104 S.Ct. at 1872, quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed. 2d 683 (1977).

> Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." The requirement that there be minimum contacts is grounded in fairness. It assures that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there."

*Consolidated Development Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000) (internal citations omitted), *cert. denied*, 534 U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 n.3 (11th Cir. 2006) ("[S]pecific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]"). On the other hand, general jurisdiction derives from the defendant's contacts with the forum that are unrelated to the litigation. *Helicopteros, supra,* 466 U.S. at 414-415 n.9, 104 S.Ct. at 1872 n.9; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n.15, 105 S.Ct. 2174, 2182 n.15, 85 L.Ed.2d 528 (1985) ("'Specific' jurisdiction contrasts with 'general' jurisdiction, pursuant to which 'a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.'"); *Consolidated Development Corp., supra*, 216 F.3d at 1292 ("General personal

jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated."); *Madara v. Hall,* 916 F.2d 1510, 1516 n.7 (11th Cir. 1990) ("General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation."). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development Corp., supra*, 216 F.3d at 1292.

5.     Plaintiff concedes that there is no general jurisdiction in this case (Doc. 8, at 5-6), arguing instead that the defendants are subject to specific personal jurisdiction in the Southern District of Alabama because they have committed intentional torts against DocRX and directly contracted with DocRX, an Alabama corporation (*id*. at 6-24).[8]

6.     As alluded to earlier, specific jurisdiction focuses upon whether plaintiff's cause of action arises out of or relates to the non-residents' contacts with the forum state. *Rudzewicz, supra*, 471 U.S. at 472, 105 S.Ct. at 2182 ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposely directed' his

---

[8]     The plaintiff, of course, "bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1217 (11th Cir. 2009) (citation omitted).

activities at residents of the forum . . ., and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]").  This Court must conduct its Due Process inquiry "as to each defendant separately, and for specific jurisdiction analysis, as to each claim separately." *KVAR Energy Servs., Inc. v. Tri-State Enegry Solutions, LLP,* 2009 WL 103645, *3 (M.D. Fla. Jan. 15, 2009); *see Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."); *Stubbs, supra,* 447 F.3d at 1360 & 1360 n.3 ("We review personal jurisdiction as it relates to each defendant separately. . . . There is no issue in this case that Stubbs seeks to assert general, and not specific, jurisdiction over the Defendants. This case involves only personal general jurisdiction and not specific personal jurisdiction."); *Berry v. Salter*, 179 F.Supp.2d 1345, 1348 (M.D. Ala. 2001) ("These [Due Process] requirements must be met as to each defendant.").

**B.** **Breach Contract Claim Against Defendants Scott Ray, Garrett Hebert, and Stacy Patin**.

7.    Plaintiff contends in its complaint that Ray, Hebert, and Patin breached the non-compete agreements they signed with it in May and June of 2009 by working on behalf of Dox Consulting, beginning on January 1, 2010, to procure and solicit business in direct competition with DocRX. While each of the individual defendants named in this count admit to signing the non-compete agreements, they place emphasis on the fact that

they executed same outside Alabama and then faxed those agreements to DocRX in Mobile. (Doc. 5, Affidavits of Ray, Hebert & Patin, at ¶ 2) While undoubtedly true, it is also clear that the agreements were not fully consummated until Ward signed those agreements on behalf of plaintiff and returned same to the individual defendants by return fax. (*See* Doc. 12, Ward's second aff., at ¶ 2) Moreover, while it is clear that the non-compete agreements did not contain forum-selection clauses and did not contemplate that these individuals would perform work inside the State of Alabama, those simple agreements, as aforesaid, were not completely formed until executed by plaintiff in Alabama[9] and clearly provided that the individual defendants would be provided with confidential information, including client lists, and could not compete with plaintiff's business for a period of at least one year after termination by being employed in a business anywhere in the United States substantially similar to or competitive the business activity of DocRX.

8.      It has long been recognized that "an individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts in the other party's home forum[]" sufficient for the exercise of personal jurisdiction over the non-resident defendant. *Burger King, supra,* 471 U.S. at 478, 105 S.Ct. at 2185; *see also*

---

[9]      In making this finding, the Court has construed all allegations of the complaint and the facts contained in the affidavits in the light most favorable to the plaintiff.

*Diamond Crystal Brands, Inc. v. Food Movers International, Inc.,* 593 F.3d 1249, 1268 (11th Cir. 2010) ("[I]t is settled that entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test."); *ICEE Distibutors, Inc. v. J&J Snack Foods Corp.,* 325 F.3d 586, 591 (5th Cir. 2003) ("Contracting with a resident of the forum state does not alone support the exercise of jurisdiction over the defendant.").

Rather, when inspecting a contractual relationship for minimum contacts, we follow a highly realistic approach that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing. The focus must always be on the *nonresident defendant's* conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum. This focus ensures that a defendant will not be subject to jurisdiction based solely on random, fortuitous, or attenuated contacts.

This case involves a forum seller's effort to sue a nonresident buyer in the seller's home forum for breach of contract. In this context, we have rejected jurisdiction when the buyer's *sole* contact with the forum is contracting with a resident seller who performs there. This follows from the two well-established propositions that neither merely contracting with a forum resident nor the forum resident's unilateral acts can establish sufficient minimum contacts.

But nonresident purchasers can still be subject to jurisdiction in the seller's forum. Jurisdiction is often found where further contacts or plus factors connect the defendant to the jurisdiction. Courts have considered a defendant's initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection or use in shipping, participating in the manufacturing process, establishing a relationship by placing multiple orders, requiring performance in the forum, negotiating the contract via telefaxes or calls with the plaintiff, the list goes on.

*Diamond Crystal Brands,* 593 F.3d at 1268-1269 (internal citations, quotation marks, and footnotes omitted; emphasis in original).

9.       While the undersigned obviously recognizes that this case does not involve a buyer-seller relationship, as did *Diamond Crystal Brands, supra,* the language in that case is a reminder of the need for plus factors connecting the non-resident defendants to the forum state. It is plaintiff's position that prior negotiations and actual course of dealing between the breach of contract defendants and DocRX indicate that these defendants knew DocRX was an Alabama corporation and knew that future consequences of the breach of the non-compete agreements would harm DocRX in Alabama, such that they should reasonably have expected to be haled into court in Alabama. Plaintiff also contends that the non-compete agreements have a substantial connection to Alabama because the focus of same was to protect DocRX in case the non-residents left DocRx.

10.      Although this is a close case, the Court need agree with plaintiff that Ray, Hebert and Patin should reasonably have anticipated being haled into Alabama to defend this lawsuit. While the undersigned does find implicit in the Supreme Court's determination in *Burger King, supra,* the out-of-state parties' knowledge that the individual they are dealing with is a resident of the forum and would feel the effects/harm

of a breach of that contract within the forum,[10] much more than such base knowledge exists in this case. First, these non-compete agreements were executed as an adjunct to an oral agreement between plaintiff and the eight individual defendants to promote its business to physicians and medical groups and clinics across the country.[11] Moreover, the terms of the non-compete agreements provided that these individuals would be privy to confidential information of plaintiff, including client lists. To this end, Ray, Hebert, and Patin, along with the other individual defendants, were provided extensive training, via the internet and conference calls that originated from Mobile, to acclimate them with DocRX's software and business operations, including plaintiff's private client lists. Finally, it was the clear intent of the non-compete agreements to protect DocRX in case

---

[10]     Such "knowledge" by the out-of-state defendants, without more, simply does not equate to "contacts" initiated by the out-of-state defendants and directed toward Alabama sufficient for this Court to exercise personal jurisdiction over these defendants. *Cf. Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("Appellants' sole evidence is their state court petition, which alleges 'on information and belief' that Appellee knew Appellants are Texas residents and knew its actions would intentionally cause harm to Appellants in Texas. Appellants present no other evidence of Appellee's contacts with Texas relating to Appellants' claims, and thus the district court properly concluded that the allegations are merely conclusory."). As explained, *infra*, there exists "more" in this case sufficient to establish the minimum contacts requirement.

[11]     Discussions/negotiations preliminary to this oral agreement, of course, brought two of the eight individual defendants to Mobile, Alabama and later those same two individual apparently came back to Mobile and tried to procure Mobile Infirmary as a client for DocRX. Moreover, there has been no suggestion that not one of the defendants received monies/commissions from plaintiff's operating account in Alabama as a result of the oral agreement reached by the parties.

the non-residents left DocRx and, of course, according to the allegations of the complaint, the agreements were breached when Ray, Hebert, and Patin began working for Dox Consulting, LLC in an identical business.[12] Given the voluntary activity of the individual defendants in faxing the non-compete agreements to plaintiff in Alabama at its corporate headquarters[13] and, as well, these defendants' direct participation in extensive training, originating from Mobile, regarding plaintiff's confidential software and business information, including client lists, as contemplated by the agreements, this Court need find that these defendants reasonably should have anticipated being haled into Court in Alabama when they decided to work for Dox Consulting, LLC, a business engaged in identical activities to that of plaintiff and directly compete with plaintiff.

**C.** **Intentional Torts and  *Calder v. Jones* "Effects" Test**.

11.      In cases involving intentional torts, the applicable "minimum contacts" test is the "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *Oldfield, supra,* 558 F.3d at 1220 n.28. "Stated in its broadest construction, the effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an

---

[12]      In executing the non-compete agreements, Ray, Hebert and Patin created a continuing obligation to DocRX.

[13]      As previously indicated, at least at this point in time the Court must regard those agreements as having been consummated in Alabama upon the fixture of Ward's signature on same.

injury within the forum that the defendant should have reasonably anticipated." *Id.* (citations omitted); *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) ("In *Ziegler* [*v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995)], the court noted that[] . . . '[i]n [a] tort case[] jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state.' The court formulated the *Calder* test for personal jurisdiction as requiring a tort that was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." (internal citation omitted)).

12.    In this case, the defendants do not contend that the allegations of plaintiff's complaint, or the additional allegations contained in Ward's first affidavit, do not establish the first[14] and third[15] prongs of *Calder's* "effects" test; instead, the focus of the

---

[14]    The tort claims asserted against the defendants are certainly properly classified as intentional torts. *See, e.g., Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 453 (Ala. 2004) ("This Court recently recognized that to establish tortious interference with contractual or business relations a plaintiff must prove: 1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the interference." (internal quotation marks and citations omitted)); *Warren v. Birmingham Bd. of Educ.,* 739 So.2d 1125, 1132 (Ala.Civ.App. 1999) ("To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." (internal citations and quotation marks omitted)); Ala.Code § 8-27-1, *et seq.* (the Alabama Trade Secrets Act).

defendants' motion to dismiss and their reply is upon the second requirement, namely,

whether they aimed their alleged tortious conduct at Alabama.

> [J]urisdiction under *Calder* requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum. . . . [T]he *Calder* effects test can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity. Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement. The defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied. In the typical case, this will require some type of entry into the forum state by the defendant.

---

[15]    The defendants do not contest that their actions/conduct caused harm that they reasonably should have anticipated would be suffered by plaintiff in Alabama, instead emphasizing that "something more than 'mere effects' is required." *Drayton Enterprises, L.L.C. v. Dunker*, 142 F.Supp.2d 1177, 1185 (D.N.D. 2001); *see also id.* ("Here, there is no connection between defendants and North Dakota beyond the alleged tort, and this is insufficient even under the effects test. . . . In short, the Court has been unable to locate a case in which the sole connection between the defendant and the forum is the effects of the intentional tort. All the cases the Court has considered and discussed above contain some additional element of some kind justifying application of the effects-test method of establishing jurisdiction."). As the undersigned explains, *infra*, this case does present additional contacts which demonstrate that the defendant expressly aimed its tortious conduct at Alabama and thereby justifies a finding that the minimum contacts requirement has been established by plaintiff.

Even assuming a passing suggestion by the defendants that the third prong of *Calder* is not present, the contents of the complaint and the affidavits filed to date in this case establish that the defendants knowingly and voluntarily undertook a business relationship with plaintiff, an Alabama corporation, and knew that the brunt of any injury to plaintiff (as a result of actions taken by defendants related to plaintiff and its business activities) would be felt in Alabama.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3rd Cir. 1998); *see Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("Our review of [] post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposely availed itself of the benefits of the forum's laws."); *Ashton v. Florala Memorial Hosp.*, 2006 WL 2864413, *10 (M.D. Ala. 2006) ("Courts in other jurisdictions, and most recently the Supreme Court of Alabama, however, have recognized that 'most courts define the *Calder* test as requiring something more than mere awareness that one's intentional acts will cause harm in the forum state.'").

13.     Although this case again poses a close question, the undersigned concludes that the evidence in this case meets the second prong of the *Calder* "effects" test. In reaching this conclusion, the undersigned finds that this case closely parallels *Calder*. First, just as the defendants in *Calder* garnered all the information for the allegedly libelous article from California sources, where plaintiff lived and worked, so too the defendants in this case used the information gained about plaintiff's software and business operations, including private client lists, from the many training sessions originating from Alabama to then slander plaintiff, misappropriate its software, business

processes and ideas, and client lists, and interfere with its contractual relationships with the Campbell Clinic and Tria. In other words, the information that defendants obtained from the training sessions with plaintiff originating from Alabama (via the internet or conference call) underscore and inform all of plaintiff's tort claims asserted against the defendants; without these training sessions and the information supplied to defendants from Alabama regarding plaintiff's unique software, business processes and ideas, and client lists, the defendants would have been unable to form Dox Consulting, LLC,[16] a business all but identical to DocRX (including the name), and directly compete with plaintiff. The activities of the defendants in procuring and using the foregoing information were not the sole activities aimed at Alabama. In addition, according to the allegations of the complaint, after the "launch" of Dox Consulting[17] by the defendants, the defendants utilized DocRX documents and materials provided to them during their time with DocRX in promoting Dox Consulting and in an attempt to take clients from DocRX and made phone calls, sent emails, and initiated correspondence with DocRX in Alabama. Further, the defendants contacted current DocRX sales representatives in

---

[16]    Without the California sources, the defendants in *Calder* would not have been able to publish their article about Shirley Jones.

[17]    Prior to the formation of Dox Consulting, while the individual defendants were working on behalf of DocRX, Booty and Herfield traveled to Mobile and attempted to garner Mobile Infirmary as a client for plaintiff.

Alabama, Chris Gaddy and Andrew Lewis, in an attempt to hire them away from plaintiff despite the defendants' knowledge that both men were under contract with DocRX.[18]

14.     Based upon the foregoing, the undersigned can reach no other conclusion but that the defendants were taking aim at DocRX in Alabama when they interfered with its contractual relationships with the Campbell Clinic and Tria, misappropriated its software, processes and ideas, and client lists, and made false and defamatory statements about plaintiff to its current and potential clients, including the Campbell Clinic and Tria, in an effort to take these clients from plaintiff. *Cf. Eagle Metal Products, LLC v. Keymark Enterprises, LLC,* 651 F.Supp.2d 577, 588 & 589 (N.D. Tex. 2009) ("VPT alleges that Dietzen defamed and disparaged VPT's business in statements to several VPT customers, including TUFF SHED, Inc. . . . The Complaint does not allege that the disparaging and defamatory statements were actually made to TUFF SHED representatives in Texas, but VPT urges that, most of its business is conducted in Texas, with Texas-based customers, and therefore the harm to it is felt primarily in Texas. The Court concludes that jurisdiction over Dietzen can be exercised under *Calder*. It is reasonable to expect that the effect of the alleged disparagement and defamation would be felt in Texas, where VPT was principally doing business. . . . The contracts allegedly

---

[18]     *Cf. Nucor Corp v. Bell,* 482 F.Supp.2d 714, 722 (D.S.C. 2007) (finding "SeverCorr's solicitation of Nucor's employees in South Carolina" to be "a significant contact with the forum.").

interfered with by Dietzen . . . [include] contracts between VPT and its customers, such as TUFF SHED. . . . Because the tortious interference claim relating to customer agreements is based on Dietzen's allegedly defamatory statements to customers such as TUFF SHED, the same rationale that applies to the defamation claim applies here. Dietzen is charged with knowledge that any harm to VPT from such conduct would be felt in Texas, and *Calder* thus vests jurisdiction in this Court. . . . VPT claims Keymark and Dietzen stole VPT's customer lists and distributed them to VPT's competitors, Automatic and Black, who then used the lists to solicit VPT's customers. Dietzen is charged with knowing that the harm to VPT from this alleged conduct would be felt in Texas. The Court thus has jurisdiction over the misappropriation claim under the effects test." ); *TEKsystems, Inc. v. Modis, Inc.,* 2008 WL 5155667, *3 (N.D. Ill. Dec. 5, 2008) ("Personal jurisdiction over Pelligrini is appropriate with respect to TEKsystems' misappropriation of trade secrets [] and tortious interference with contractual relationships [] claims based upon the effects doctrine. Under the effects doctrine, personal jurisdiction over a nonresident defendant is proper when defendant's intentional tortious actions aimed at the forum state cause harm to plaintiff in the forum state. The effects doctrine is interpreted broadly to permit the state in which the injury (and therefore the tort) occurs to entertain the suit, even if all other relevant conduct occurred outside the state. Pelligrini engaged in sufficient minimum contacts with Illinois to satisfy personal jurisdiction requirements. Pelligrini solicited Lukas to breach his employment

agreement, and encouraged him to misappropriate TEKsystems' customer information from its Downers Grove, Illinois office. After Modis hired Lukas, Pelligrini was involved in coordinating Lukas' delivery of the customer information to Modis' Chicago office. Pelligrini denies these allegations, but all factual disputes must be resolved in favor of TEKsystems. According to TEKsystems, it suffered injury in Illinois from the compromise of the Chicago Data. Under these circumstances, it was foreseeable that Pelligrini would be required to answer for his alleged conduct in Illinois." (internal citations and quotation marks omitted)); *Stelax Industries, Ltd. v. Donahue,* 2004 WL 733844, *4 (N.D. Tex. Mar. 25, 2004) ("[T]o the extent Plaintiff's claim for misappropriation of trade secrets is premised on the misappropriation of secrets learned in phone conversations between the individual Defendants and Hardy, while Hardy was in Texas, Plaintiff has established a *prima facie* case for jurisdiction with respect to all Defendants."); *see First American First, Inc. v. National Ass'n of Bank Women,* 802 F.2d 1511, 1517 (4th Cir. 1986) ("The allegedly defamatory letters, though written in and mailed from Illinois and distributed throughout the country, were nevertheless directed in their intended effect at the activities in Virginia of Virginia residents. Plaintiff Leake lives and works in Virginia; First American, his corporate business, is incorporated in Virginia and its officers are residents there. All the operations, activities and services of First American are conducted in Virginia by Leake and other employees. Accordingly, the NABW knew or should have known that its allegedly defamatory letters would inflict

the greatest injury upon Leake in the state in which he resided and conducted his business. There can be no doubt that, for purposes of the jurisdictional inquiry, the brunt of the harm, in terms of both Leake's emotional distress and the injury to his professional reputation was suffered in Virginia. Though the allegedly libelous letters were not directed only at the plaintiffs' actions in Virginia, there can be no doubt that the primary and most devastating effects of the letters would be felt in Virginia where Leake lives and his business is principally located." (internal citations, quotation marks, and brackets omitted)). Stated differently, the defendants' knowledge that their conduct ultimately would be felt by DocRX in Alabama, when accompanied by the above-identified other contacts, is not too unfocused to justify personal jurisdiction. *Cf. ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir. 1997) ("The ESAB Group contents[] that[] whenever the sales were made by Centricut, and thus lost by the ESAB Group, they were ultimately felt in South Carolina at the ESAB Group's headquarters. While this is undoubtedly true, when unaccompanied by other contacts, it is ultimately too unfocused to justify personal jurisdiction."), *cert. denied*, 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998); *see Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1157 (9th Cir. 2006) ("The defendant in both *Bancroft* and *Metropolitan Life* did 'something more' than commit a 'foreign act with foreseeable effects in the forum state.'"). Accordingly, the defendants in this case reasonably should have anticipated being haled into this court to defend plaintiff's tort claims.

D.      **Fair Play and Substantial Justice**.

15.      In addition to the above,[19]   "considerations of fair play and substantial justice counsel permitting the exercise of personal jurisdiction[.]" *Sun Bank, N. A. v. E. F. Hutton & Co., Inc.*, 926 F.2d 1030, 1034 (11th Cir. 1991) (citation omitted); *see Rudzewicz, supra*, 471 U.S. at 477, 105 S.Ct. at 2184 ("These considerations [of fair play and substantial justice] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."); *Ruiz de Molina, supra*, 207 F.3d at 1358-1359 ("[B]ecause these considerations serve to establish the reasonableness of jurisdiction in this case, a lesser showing of minimum contacts than otherwise would be required is sufficient."). "In determining whether jurisdiction comports with traditional notions of fair play and substantial justice, the court looks at: (a) 'the burden on the defendant,' (b) 'the forum State's interest in adjudicating the dispute,' (c) 'the plaintiff's interest in obtaining convenient and effective relief,' (d) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (e) 'the shared interest of the several States in furthering substantive

---

[19]      *Professional Locate & Recovery, Inc. v. Prime, Inc.,* 2007 WL 2333218, *8 (S.D. Ala. Aug. 15, 2007) ("Of course, a finding of minimum contacts does not conclude the personal jurisdiction analysis in and of itself; rather, personal jurisdiction can only be exercised over one having minimum contacts with the forum if doing so would not offend traditional motions of fair play and substantial justice."); *see Posner, supra,* 178 F.3d at 1221 (after finding the minimum contacts requirements satisfied, the appellate court considered whether exercising jurisdiction over the non-resident defendant would offend notions of fair play and substantial justice).

social policies.'" *McGow v. McCurry*, 412 F.3d 1207, 1216 (11th Cir. 2005), quoting *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1276 (11th Cir. 2002); *see Ruiz de Molina, supra,* 207 F.3d at 1358 ("Once it is decided that defendants have at least minimum contacts with a forum, the burden is on the defendants to show that the imposition of jurisdiction in the forum is unreasonable. Several factors are relevant to this showing: (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies.").

16.     It is clear to the Court that while the defendants will feel some  burden by having to come to Alabama to defend DocRX's suit, that burden will not be significant given the availability of modern transportation and communication. *See Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 259 (11th Cir. 1996) ("The burden on the defendants occasioned by litigating outside of Michigan is not slight, but modern methods of transportation and communication reduce this burden significantly."); *Olivier, supra*, 979 F.2d at 834 ("[A]s the Supreme Court of the United States has noted '. . . modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.' . . . The Supreme Court subsequently stated that the historical developments noted in *McGee* have only accelerated in the generation since that case was decided. . . . Requiring adjudication

36

in Alabama will not impose a substantial burden on LIGA and SCIGA."); *Morris, supra*, 843 F.2d at 495 ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity."). Although most of the defendants reside in Louisiana, with one individual defendant residing in Florida and another in New York, it is clear from the evidence submitted in relation to the instant motion to dismiss that all individual defendants have traveled through Mobile on several occasions and given the close proximity of the Louisiana residences of the defendants to Mobile, this Court cannot find that the defendants will be significantly burdened by having to come to this Court to defend this action. Second, Alabama has significant interests in adjudicating a lawsuit involving one of its residents who alleges it was injured in the forum state as a result of the actions of the defendants, particularly given the allegations that defendants made false and defamatory statements about plaintiff in order to convince its clients to use the identical services provided by defendants, which the defendants learned from plaintiff through internet and telephone connections emanating from Alabama, instead of remaining clients of plaintiff. *See Andersen v. Sportmart, Inc.*, 57 F.Supp.2d 651, 662 (N.D. Ind. 1999) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."). Third, DocRX has a significant interest in obtaining convenient and effective relief in this forum and it does not appear to this Court that Louisiana would have as much interest, as would Alabama, in providing

such relief since the injury to plaintiff occurred in Alabama as a result of the defendants' contacts with Alabama. *See Morris, supra*, 843 F.2d at 495 ("[O]btaining the most efficient resolution of the controversy suggests that Alabama is an appropriate forum for such a resolution. As the District Court for the Southern District of Mississippi noted when it transferred the case to the Southern District of Alabama, 'It appears that the Southern District of Alabama is the proper venue for this cause. It is where the alleged accident occurred, diversity jurisdiction exists, and a majority of witnesses reside.'"). Fourth, the witnesses and evidence relevant to plaintiff's claims are in Alabama, Louisiana, Florida, and New York, with most of the defendants residing in Louisiana. However, those defendants live in relative close proximity to Mobile, Alabama and, therefore, this Court concludes that efficient resolution of this case suggests that jurisdiction be asserted over the defendants in the Southern District of Alabama. *See Andersen, supra*, 57 F.Supp.2d at 663 ("In evaluating [the efficient administration of justice] factor, courts generally consider where witnesses and evidence are likely to be located." ). Finally, allowing this case to proceed in this Court arguably will further Alabama's "interest in 'providing an effective means of recovery for a resident who has been damaged.'" *Leithead v. Banyan Corp.,* 926 So.2d 1025, 1032 (Ala. 2005), quoting *Shrout v. Thorsen*, 470 So.2d 1222, 1225 (Ala. 1985).

17.     In light of the foregoing, this Court concludes that exercising personal jurisdiction over the defendants in this case would not be unreasonable or inconsistent with the notions of fair play and substantial justice.

18.     Plaintiff has established not only that minimum contacts exist in Alabama over the defendants, such that this Court may exercise specific personal jurisdiction over this matter, it has also established that exercising personal jurisdiction over the defendants in this case would comport with notions of fair play and substantial justice.

**E.     Venue**.

19.     While the propriety of venue normally is governed by 28 U.S.C. § 1391, the general venue statute, it is clear that "[v]enue in removed cases is governed solely by § 1441(a)." *Kerobo v. Southwestern Clean Fuels, Corp.,* 285 F.3d 531, 534 (6th Cir. 2002); *Quick v. Coale, Cooley, Lietz, McInerny & Broadus, P.C.*, 212 F.R.D. 299, 301 (M.D.N.C. 2002) ("[V]enue of removed actions is determined by section 1441(a)[.]"). Section 1441(a) provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, *to the district court of the United States for the district and division embracing the place where such action is pending*." 28 U.S.C. § 1441(a) (emphasis supplied). Thus, "§ 1441(a), by requiring removal to the district court for the district in which the state action is pending, properly fixes the federal venue in that district." *Hollis v. Florida State University*, 259 F.3d 1295, 1299 (11th Cir. 2001);

*see also id.* at 1300 ("[A]s a matter of law, § 1441(a) establishes federal venue in the district where the state action was pending[.]"). Since venue is properly fixed in this district, the undersigned **DENIES** the defendants' motion to dismiss this action for improper venue. Instead, the Court focuses on the defendants' alternative argument that a transfer of venue is appropriate under 28 U.S.C. §1404.

20.     Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court **may** transfer any civil action to any other district or division where it might have been brought." (emphasis supplied). Relevant § 1404 factors include: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citations omitted); *see also Gould v. National Life Ins. Co.*, 990 F.Supp. 1354, 1357-1358 (M.D.Ala. 1998) (when deciding whether to transfer venue, "courts generally rely on a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability

of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system."); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (decided before enactment of § 1404 but noting numerous relevant factors and observing that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

21.    The defendants in this case have not satisfied their burden of establishing that this case represents one of those rare situations warranting the disturbance of plaintiff's choice of forum. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. . . . Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient."). The convenience of the parties amounts to a wash in this case since it is certainly more convenient for the plaintiff, whose principal place of business is in Mobile, Alabama, to pursue this lawsuit in this Court, whereas it is more convenient for defendants to defend the action in the Western District of Louisiana, where most of the defendants reside.[20] There is no indication from the defendants that they have witnesses that will be

---

[20]    The relative means of the parties also appears to be a wash, the defendants providing no evidence that they have less of an ability to travel to this district to litigate this action or that the plaintiff is in a superior financial position to travel and litigate this action in the Western District of Louisiana.

unavailable for trial in this Court, *cf. American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 262 (W.D.Mo. 1980) ("[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied."),[21] and while those witnesses may possibly be outside the subpoena power of this Court, those problems would persist in Louisiana, with respect to witnesses located in Alabama and elsewhere. Given the ability to move documents with relative ease in today's world, the location of documents (and access to other sources of proof) factor certainly does not weigh in favor of transfer to the Western District of Louisiana. In addition, as plaintiff points out, this Court is more familiar with Alabama law, the governing law in this action, than is the United States District Court for the Western District of Louisiana. Finally, there has been presented nothing to suggest that trial efficiency and the interests of justice weigh in favor of transfer, particularly since this Court stands ready to give both parties a full and fair hearing in an expeditious manner. *Cf. P & S Business Machines, Inc. v. Canon USA, Inc.,* 331 F.3d 804, 808 (11th Cir. 2003) ("Although docket congestion, if proven, may be an appropriate consideration in a § 1404 motion to transfer, case law does not suggest that docket congestion is, by itself, a dispositive factor."). All a transfer would do in this

---

[21]     Defendants have not made the specific showing regarding witnesses that the court in *American Standard, Inc.* found to be necessary.

case is shift inconvenience from the defendants to the plaintiff and, therefore, this Court must necessarily favor plaintiff's choice of forum by denying the defendants' motion to transfer venue to the Western District of Louisiana. *See Robinson, supra,* 74 F.3d at 260 ("'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'"); *Susie's Structures, Inc. v. Ziegler*, 2010 WL 2136513, *6 (M.D. Fla. May 27, 2010) ("[G]reat deference is afforded the plaintiff's choice of forum when that forum is in the district in which the plaintiff resides.").

## CONCLUSION

In light of the foregoing, the defendants' motion to dismiss for lack of personal jurisdiction and improper venue or to transfer venue (Doc. 4) is **DENIED IN ITS ENTIRETY**.

**DONE** and **ORDERED** this the 7th day of September, 2010.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**